Nott, J.,
delivered the opinion of the court:
This is an action brought to recover the net proceeds of 389 bales of cotton captured in Arkansas, which proceeds, it is alleged, amount to $110,772.
It seems to have been supposed by the claimant in this case that the burden rests on the government of establishing a claimant’s disloyalty, and that such disloyalty can be established only by showing that he gave military or material aid to the rebellion. Measured by the rule which this court has repeatedly announced, and which has since been ratified by enactment, viz, that voluntary residence in any place where the rebel force held sway is evidence prima facie that a person did give aid or comfort to the rebellion, and that it rests on such a person to prove affirmatively that he did consistently adhere to the United States, and did not give aid or comfort to persons *622 engaged in tbe rebellion, tbis case is one of tbe most defective we have ever been required to bear.
Tbe first witness for tbe claimant shows that ber decedent’s “ sympathies were with the Confederate States,” and tbat be wanted tbe witness (a poor bunted Unionist) uto enter the Confederate army as a soldier.” Tbe second witness for tbe claimant says tbat “ George TT. Carroll toas what is known as a secesh,” tbat “ he was in favor of Arkansas seceding from the Union,” and tbat “he did not-consistently adhere to-the government of the United States.” Tbe third witness shows tbat “Mr. Carroll left his plantation the latter part of August, 1863, for Texas, taking his family and the greater portion of his slaves with him, to keep them from being freed by the Federal forces.” These are all tbe witnesses called to prove loyalty, and each utterly destroys tbe case. But tbe defendants have made tbe case more complete, if possible, by calling tbe decedent’s own son, who expressly testifies: “My father ivas as loyal to the Confederate government as any man who was not in the service.”, Tbe claimant has left tbis testimony unshaken by cross-examination, and uncontradicted by other witnesses.
But it is asserted tbat tbe decedent’s “political status cannot control tbe disposition of these proceeds.” “ He,” it is said, “never bad .any claim against tbe United States. He died before the Treasury agents bad possession of the property, and of course long before tbe property was sold and tbe proceeds passed into tbe Treasury.”
We are unable to reach tbe same conclusion. Tbe adminis-tratrix stands in tbe stead of tbe decedent, representing bis rights and equities and nothing more. Her own interest in the estate as administratrix is simply representative, and tbe rights of tbe real parties in interest can neither be aided nor destroyed by ber loyalty or disloyalty. To prove the loyalty of all the distributees .of an estate which, like tbis, may be insolvent,' would be an inconvenience and impossibility, neither of which does tbe law exact.
Tbis case differs from Aubert's, (3 C. Cls. R., p. 84,) in this, tbat there tbe property was captured before tbe death of tbe owner; but tbe principle controlling, it is tbe same. Tbe administratrix must be regarded as tbe living decedent, representing bis rights, entitled to bis equities, and subject to bis disabilities.
The judgment of tbe court is tbat tbe petition be dismissed.